Duane **THOMPSON, Respondent,**

v.

**SKELGAS, INC., et al., Appellant.**

No. WD 49342.

Missouri Court of Appeals, Western District.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Allan B. Turner, Chillicothe, for appellant.

Michael B. Watkins, Chillicothe, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and SMART, JJ.

SMART, Judge.

This case arises out of an action by an employee against his former employer for a violation of the Missouri service letter statute, § 290.140, RSMo 1986. Following trial, Duane Thompson was awarded $1.00 in actual damages and $20,000.00 in punitive damages. Skelgas, Inc., and Synergy Gas Corp.[1] ("defendants") appeal from the trial court's award.

Duane Thompson was a truck driver employed by Skelgas, Inc. ("employer") from 1967 through October 11, 1985. On September 16, 1985, Thompson advised Skelgas of his intent to voluntarily resign his position to take a better job. At the time of his resignation, Thompson was entitled to receive retirement benefits and information on a company sponsored stock and thrift plan. He also had not been paid one week's wages and accrued vacation in the total sum of $665.40 at the time of his resignation.

Thompson sent a written request for a service letter to Skelgas pursuant to § 290.140. Skelgas did not respond to the service letter request. On October 20, 1986, Thompson filed a petition seeking payment of unpaid wages, an accounting, and punitive damages for failure to send employee a service letter. The trial court sustained Thompson's motion for summary judgment as to Count I for unpaid wages and judgment was entered for plaintiff in the sum of $604.91 for unpaid wages and $60.49 for accrued vacation pay, plus interest. The remaining issues were tried to the court on April 1, 1994 and a

1. Defendant Synergy Gas Corp. is the parent company of Defendant Skelgas, Inc.

verdict was returned in favor of Thompson for $1.00 actual damages and $20,000.00 in punitive damages, plus interest. The trial court specifically found that there was evidence to show a wilful intent to violate the service letter statute and to harm Thompson. Defendants appeal.

■ Skelgas claims that the trial court erred in awarding to plaintiff actual and punitive damages because the award was not supported by the evidence. Missouri courts have repeatedly stated that an employer's failure to issue a service letter when requested entitles plaintiff to nominal damages without proof of actual injury. *Potter v. Milbank Mfg. Co.*, 489 S.W.2d 197, 207 (Mo.1972). The court in *Potter* stated:

> There can be no question that plaintiff showed injury. With respect to Count II, it was not necessary for him to prove actual damages in order to be entitled to a verdict for $1.00 nominal damages. "The failure to give a proper service letter constituted an invasion of plaintiff's legal rights and without proof of any damages whatever entitled plaintiff to a verdict for nominal damages."

489 S.W.2d at 207 (quoting *Heuer v. John R. Thompson*, 251 S.W.2d 980, 985 (Mo.App. 1952)). When an employer fails to issue a proper service letter, the law presumes actual damage to plaintiff. *Heuer*, 251 S.W.2d at 985.

■ However, Skelgas contends that this court must first determine Thompson's motivations in requesting a service letter in light of the clear intent of the statute. Skelgas contends that it was impossible to respond to Thompson's request, in which Thompson sought a response to "the reason for my termination," because Thompson was not terminated, but, instead, left voluntarily. Thus, Skelgas concludes that there were no reasons for Thompson's "termination." Section 290.140 provides:

> 1. Whenever any employee of any corporation doing business in this state and which employs seven or more employees, who shall have been in the service of said corporation for a period of at least ninety days, shall be discharged or *voluntarily quit* the service of such corporation and

who thereafter within a reasonable period of time, but not later than one year following the date the employee was discharged or *voluntarily quit*, requests in writing by certified mail to the superintendent, manager or registered agent of said corporation, with specific reference to the statute, it shall be the duty of the superintendent or manager of said corporation to issue to such employee, within forty-five days after the receipt of such request, a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and *truly stating for what cause, if any, such employee was discharged or voluntarily quit such service.*

(Emphasis added). The statute clearly allows an employee who voluntarily resigns his employment to request a service letter stating the reasons for his termination of employment. Webster's dictionary defines the word "termination" to mean an "end in time or existence: close, cessation, conclusion." **Webster's Third New International Dictionary 2359 (3d ed. 1971).** Thus, the term is not merely used to describe the act of an employer discharging an employee from his employment, as Skelgas contends. This statute allows an employee to obtain written documentation that he left his employment voluntarily. Such written affirmation by an employer of an employee's voluntary resignation of employment allows the employee to avoid possible future disputes over the reason of termination. An employee may wish to retain the letter as a permanent record to be used as an aid in finding employment throughout the remainder of the employee's career. Regardless of the motive for such a request, the statute allows this type of request. Thus, Thompson was entitled to a service letter. As a result, Skelgas's first argument is not persuasive.

■ Next, Skelgas argues that even if Thompson was entitled to a service letter, he cannot be awarded actual damages for Skelgas's failure to respond to the service letter request unless evidence is presented that plaintiff sought and was refused employment as a result of the absence of the service

letter. This rule applies only in cases where plaintiff is seeking a substantial amount of actual damages; it does not apply where the verdict is for nominal damages only. *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688, 691 (Mo.App.1977). The case of *Rotermund*, cited by Skelgas, states:

> Nominal damages are recoverable upon a showing that plaintiff's right to a letter was not complied with or that the letter was deficient under the requirements of the statute.... A recovery of [substantial actual damages] is predicated upon a showing that appellant was either refused employment, or ... hindered in securing employment by reason of his not having a service letter in compliance with the statutory requirements.

558 S.W.2d at 691. Thus, Thompson was not required to prove that he was denied employment as a result of the absence of the letter to recover a nominal damage award.

■ Finally, we address the award of punitive damages. Section 290.140 provides that an employer may be liable for nominal and punitive damages for not issuing a requested service letter. The purpose of this statute is to discourage corporate employers from damaging the employability of former employees by furnishing false or misleading information as to their service or false reasons for their discharge. *Ball v. American Greetings Corp.*, 752 S.W.2d 814, 820 (Mo. App.1988). Punitive damages may be awarded for conduct on the part of employer that is outrageous because of employer's evil motive or reckless indifference to the rights of others. *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989). In the case at bar, Thompson was owed two weeks wages and vacation pay by Skelgas. At the time of trial, over eight and a half years after Thompson terminated his employment with Skelgas, Thompson still had not been paid the wages or vacation pay due him. Skelgas alleged that Thompson was not paid the money because he was not conducting himself appropriately during the separation period in that he was soliciting clients from Skelgas. Skelgas filed a counterclaim asserting this theory but later dismissed it. Skelgas never presented anything to support its contention regarding

Thompson's improper conduct or to justify its conduct toward Thompson. Also, Thompson was required to wait over two years after his termination of employment to receive the retirement and profit sharing money owed him.

Thompson's case for punitive damages was tried to the trial court. The trial court could not be expected to ignore the evidence of Skelgas's recalcitrant attitude reflected in Skelgas's failure to comply with the law by withholding monies due Thompson for over eight years. The trial court was free to consider Skelgas's conduct in deciding whether to award punitive damages in this case. The trial court could have found from the evidence that Defendant's Skelgas' conduct was outrageous due to its evil motive or reckless disregard of Thompson's rights. Thus, the trial court did not err in awarding Thompson punitive damages. Points I and II are denied.

The judgment of the trial court is affirmed.

All concur.